IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL ACTION NO.:

| | |
|---|---|
| NTE ENERGY SERVICES COMPANY, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CEI KINGS MOUNTAIN HOLDINGS, LLC, | ) |
| WATTAGE FINANCE-NC, LLC, and | ) |
| CASTILLO INVESTMENT HOLDINGS, LLC | ) |
| | ) |
| Defendants/Claimants. | ) |
| | ) |
| | ) |
| | ) |

**COMPLAINT FOR INTERPLEADER**

Plaintiff NTE Energy Services Company, LLC (hereinafter "Plaintiff" or "Asset Manager"), in support of its claim for statutory interpleader pursuant to 28 U.S.C. § 1335, alleges upon information and belief, unless otherwise specified, the following:

**Nature of Claim**

1. Plaintiff brings this Interpleader Complaint seeking the Court's assistance in determining a fair, equitable and just distribution of $13,269,397.88 (the "Disputed Funds") under Plaintiff's control, but not for Plaintiff's benefit, which Disputed Funds are the subject of competing and mutually exclusive claims, asserted by the Defendants/Claimants, that threaten to expose Plaintiff to inconsistent findings and judgments of liability.

**Parties**

2.  Plaintiff is a limited liability company formed and existing under the laws of the State of Florida. Plaintiff's sole member is NTE Energy, LLC, a limited liability company also formed and existing under the laws of the State of Florida. The sole member of NTE Energy, LLC is Seth Shortlidge ("Shortlidge"), a citizen of the State of Florida. Plaintiff's primary business is providing consulting services to energy companies.

3.  Defendant CEI Kings Mountain Holdings, LLC ("Kings Mountain") is a limited liability company formed and existing under the laws of the State of Delaware. Kings Mountain's members are: (1) CEI Kings Mountain Investor, LP; (2) Axium Kings Mountain, LLC; and (3) entities affiliated with the John Hancock Group of companies (the "John Hancock Group").

    a. CEI Kings Mountain Investor, LP is ultimately owned by limited partners, at least one of whom is, upon information and belief, a citizen of a state other than Florida.

    b. Axium Kings Mountain, LLC is ultimately owned by limited partners, including Axium Infrastructure, Inc., a Canadian corporation with its principal place of business in Montreal, Canada.

    c. The companies in the John Hancock Group that are members of Defendants Kings Mountain are John Hancock Life Insurance Company (U.S.A.), a Michigan corporation with its principal place of business in Boston, Massachusetts; John Hancock Life Insurance Company of New York, a New York corporation with its principal place of business in Valhalla, New York; and John Hancock Life and Health Insurance Company, a Massachusetts corporation with its principal place of business in Boston, Massachusetts.

4. Defendant Wattage Finance-NC, LLC ("Wattage") is a limited liability company formed and existing under the laws of the State of Delaware. Wattage's members are: (1) Midland National Life Insurance Company; (2) North American Company for Life and Health Insurance; (3) Teachers Insurance Company; (4) Horace Mann Insurance Company; and (5) the John Hancock Group.

   a. Midland National Life Insurance Company is a South Dakota corporation with its principal place of business in Sioux Falls, South Dakota.

   b. North American Company for Life and Health Insurance is an Iowa corporation with its principal place of business in Des Moines, Iowa.

   c. Teachers Insurance Company is an Illinois corporation with its principal place of business in Springfield, Illinois.

   d. Horace Mann Insurance Company is an Illinois corporation with its principal place of business in Springfield, Illinois.

   e. The companies in the John Hancock Group that are members of Defendant Wattage are the same ones described in the preceding paragraph as members of Kings Mountain.

5. Defendant Castillo Investment Holdings, LLC ("Castillo") is a limited liability company formed and existing under the laws of the State of Florida. Castillo's sole member is Shortlidge.

6. The above Defendants are hereinafter collectively referred to as "Claimants."

## Jurisdiction

7. This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1335 as follows:

    a. The Claimants have adverse and competing claims in excess of $500.00 against assets controlled by the Asset Manager;

    b. The total amount in controversy exceeds $500.00;

    c. At least two adverse Claimants are citizens of different states; and

    d. With an appropriate order from this Court, the Asset Manager shall deposit into the registry of the Court the full and total amount of the Disputed Funds, to wit, $13,269,397.88.

8. This Court has personal jurisdiction over each Defendant because Federal Rule of Civil Procedure 4(k)(1)(C) provides that serving a summons establishes personal jurisdiction over a defendant when authorized by federal statute, and 28 U.S.C. § 2361 authorizes nationwide service of process in statutory interpleader actions under 28 U.S.C. § 1335.

## Facts

9. The allegations set forth in paragraphs 1 to 8 are realleged and reincorporated as if fully set forth herein.

NTE Structure and Membership Interests

10. In July 2014, the Claimants formed NTE Carolina Holdings, LLC, ("NTE"), a limited liability company organized under the laws of the State of Delaware.

11. NTE is governed by a Limited Liability Operating Agreement (as amended, the "LLC Agreement") dated July 18, 2014 and amended as of March 10, 2016.

12. The LLC Agreement creates two classes of membership interests: "Class A Membership Interests" and "Class B Membership Interests."

13. Under the LLC Agreement, Kings Mountain and Wattage each respectively owns 50% of NTE's Class A Membership Interests and are collectively referred to as the "Class A Members."

14. Defendant Castillo owns 100% of NTE's Class B Membership Interests and is the sole "Class B Member."

The Kings Mountain Energy Center and the Asset Management Agreement

15. NTE is the sole member of NTE Carolinas, LLC (the "Project Company"), also a limited liability company organized under the laws of the State of Delaware.

16. Through the Project Company, NTE developed—and it now owns and operates—the Kings Mountain Energy Center, a natural gas-fired electric generating facility located in Cleveland County, North Carolina (the "KMEC Project").

17. Plaintiff Asset Manager is party to a March 11, 2016 Asset Management Agreement with the Project Company (which supersedes a prior Asset Management Agreement,

and is referred to hereinafter as the "AMA"), pursuant to which the Asset Manager provides comprehensive administrative and management services relating to the KMEC Project.

18. Section 12.02 of the AMA provides, in relevant part, that each party thereto "consents to the exclusive jurisdiction and venue of any state or federal court within or for the State of North Carolina for adjudication of any such suit, claim, action or other proceeding in law or equity relating to this Agreement or to any other transaction contemplated hereby."

The Utility Refund

19. On September 28, 2018, the Asset Manager informed NTE by email that:

   a. Duke Energy Carolinas, LLC had deposited $24,126,177.97 (the "Utility Refund") into a Project Company account that all parties refer to as the "Construction Account"; and

   b. in accordance with the Asset Manager's understanding of the LLC Agreement, the Asset Manager proposed to allocate the entirety of the Utility Refund to the Class A and Class B Members as follows: 45% (*i.e.*, $10,856,780.09) to each Class A Member and 10% (*i.e.* $2,412,617.79) to the Class B Member.

20. On September 28, 2018, in response to the Asset Manager's email described in the preceding paragraph, NTE board member James Pass, who is affiliated with Claimant Wattage, "instructed" the Asset Manager by email "not to distribute these dollars pending further instruction," because "[t]he Class A Members need time to analyze this development."

21. In response to the Class A Members' September 28 email, the Asset Manager retained the Utility Refund in the Construction Account.

6

### Claimants Dispute Allocation of the Utility Refund

22. On October 5, 2018, Castillo commenced an arbitration against NTE, Kings Mountain and four Managers of NTE (the "First Arbitration," AAA Case No. 01-18-0003-7221), alleging breaches of the LLC Agreement in connection with Kings Mountain's transfer to a third party of certain Class A Membership Interests.

23. On October 23, 2018, NTE filed an answer and counterclaim in the First Arbitration, alleging that the Class A Members "are being deprived" of the Utility Refund as a result of Castillo's conduct, and seeking a declaration that the Utility Refund "is allocated entirely to the Class A Members."

24. On November 19, 2018, Castillo commenced a second arbitration against NTE (the "Second Arbitration," AAA Case No. 01-18-0004-3127), alleging that NTE and its board failed to determine in good faith the formula by which Castillo may be entitled to certain distributions under the LLC Agreement.

25. In an email to the Asset Manager dated November 28, 2018, NTE board member John Breckenridge, who is affiliated with Claimant Kings Mountain, stated that he was writing on behalf of the NTE board and that "the Utility Refund was erroneously deposited into the Construction Account."

26. A letter to the Asset Manager dated November 30, 2018 (the "Instruction Notice") signed:

NTE CAROLINAS HOLDINGS, LLC

By: John Breckenridge

Title: Authorized Person

7

instructed the Asset Manager to transfer 45% of the Utility Refund to each of Kings Mountain and Wattage (*i.e.*, the Class A Members), and to retain the remaining 10% in the Construction Account "pending further instruction from the [NTE] Board."

27. By letter addressed to the NTE board dated December 3, 2018 (the "Dispute Notice"), counsel for Castillo stated, in pertinent part, that, in Castillo's view:

   a. the Instruction Notice is "facially invalid";

   b. issuance of the Instruction Notice "constitutes a material breach by [NTE] of the LLC Agreement" because the distribution formula provided therein "does not in any way permit [NTE] or its Board of Managers . . . to make Distributions solely to the Class A Members and not the Class B members"; and

   c. "[NTE] must immediately cease and desist any efforts to cause this invalid Distribution."

28. In the face of these conflicting letters, the Asset Manager wrote an email to the NTE board, noting that it had received the Dispute Notice from Castillo and requesting "further instruction from the members of [NTE] on how to proceed with the Utility Refund permitted distribution."

29. A letter to the Asset Manager dated December 5, 2018 and once again signed:

NTE CAROLINAS HOLDINGS, LLC

By: John Breckinridge

Title: Authorized Person

stated:

8

a. that the Utility Refund was erroneously deposited into the Construction Account;

b. that NTE was reiterating its instruction that the Asset Manager "promptly" transfer 45% of the Utility Refund to each of the Class A Members; and

c. that the Asset Manager's failure to effectuate such a transfer would constitute a material breach of the AMA.

30. By letter addressed to counsel for Castillo dated December 6, 2018, counsel for the Class A Members stated that:

a. "none of the assertions in the December 3 Dispute Notice . . . are accurate";

b. the Dispute Notice "labors under the misapprehension that the Utility Refund is a distribution under the [NTE's] LLC Agreement to be made pro rata to all Members"; and

c. the arbitral panel in the First Arbitration "has the exclusive jurisdiction to decide on the proper allocation of the remaining 10% of the Utility Refund."

The Asset Manager Faces Irreconcilable Demands Concerning the Utility Refund

31. Contemporaneous with the exchange of communications among the Claimants and the Asset Manager addressed in the preceding paragraphs, the Asset Manager retained outside counsel, who subsequently contacted outside counsel for Claimants Kings Mountain and Wattage. By letter addressed to counsel for Claimants Kings Mountain and Wattage, dated December 20, 2018, the Asset Manager's outside counsel:

a. referenced a December 18, 2018 telephone discussion in which the parties discussed their respective positions; and

9

b. explained that the "Asset Manager is caught in the middle of the dispute between the Class A and B members regarding the utility refund" insofar as "the Class A members believe the Asset Manager should distribute at least 90% of the utility refund to them, while the Class B members believe that any instruction to distribute the sum in question . . . would constitute a breach of, the [LLC Agreement] and would, as a result, not be consistent with the Asset Management Agreement."

32. A letter to the Asset Manager dated December 21, 2018, and once again signed:

NTE CAROLINAS HOLDINGS, LLC

By: John Breckinridge

Title: Authorized Person

stated that:

a. by its refusal to comply with the Instruction Notice, *i.e.* by transferring 45% of the Utility Refund to each of Claimants Kings Mountain and Wattage, the Asset Manager was "in a willful, continuous, and material breach of" the AMA; and

b. such non-compliance constituted grounds to terminate the Asset Manager and "seek relief from the courts."

33. By letter addressed to NTE dated December 27, 2018, counsel for Castillo advised that:

a. NTE's instructions to distribute 90% of the Utility Refund were "invalid" under the LLC Agreement; but

10

    b. nonetheless, "Castillo does not object to the Asset Manager causing the Distribution to [Wattage] of $10,856,780.09," as set forth in the Instruction Notice"; and

    c. "[b]ecause Castillo does not object to this Distribution to Wattage, the Asset Manager is now free to distribute to Wattage the amount of $10,856,780.09."

34. On January 3, 2019, the Asset Manager's counsel wrote to counsel for Claimants Kings Mountain and Wattage to explain, in relevant part, that:

    a. the Asset Manager has not breached any of its contractual obligations;

    b. in light of Castillo's agreement to transfer 45% of the Utility Refund to Wattage, the Asset Manager was prepared to make that transfer upon receiving a valid consent from NTE's other Members; and

    c. counsel would be pleased to meet and confer to discuss these issues further.

35. On January 7, 2019, the Asset Manager's counsel had a teleconference with counsel for Claimants Kings Mountain and Wattage, the substance of which was subsequently memorialized in a January 10, 2019 letter from the Asset Manager's counsel to counsel for Claimants Kings Mountain and Wattage.

36. In response, counsel for Claimants Kings Mountain and Wattage sent a letter to the Asset Manager's counsel on January 11, 2019, stating that:

    a. the Asset Manager's refusal to distribute 90% of the Utility Refund was a "willful, continuous, and material breach of the" AMA;

    b. the Asset Manager's January 3rd offer to distribute 45% of the Utility Refund to Wattage would not satisfy NTE's concerns because: (1) NTE instructed the Asset Manager to initiate a "transfer," not a "distribution"; and (2) the transfer to

11

Case 1:19-cv-00018-MR-WCM   Document 1   Filed 01/17/19   Page 11 of 15

Wattage would not cure the Asset Manager's refusal to transfer the 45% to which Kings Mountain is entitled; and

c. "given that [NTE] issued a direct instruction to [the Asset Manager] to make the payment to Wattage, and the Class B member has no objection to that action, there is no justification for [the Asset Manager's] continued failure to effect this payment."

37. In a January 16, 2019, email to the NTE Board, the Asset Manager stated:

> The Asset Manager is aware of a dispute between and among the various Members of NTE Carolinas Holdings with respect to certain funds referred to as the "Utility Refund." The Asset Manager takes all of its contractual obligations very seriously and intends to abide by them. Under those obligations, as Asset Manager we believe we're not authorized nor required to resolve any disputes among the Members of NTE Carolinas Holdings and remain hopeful that the Members of NTE Carolinas Holdings will resolve their disputes very soon.
>
> The Asset Manager is in receipt of two letters: (i) a December 27, 2018 letter addressed to the Asset Manager from John F. Baughman; and (ii) a January 11, 2019 letter addressed to the Asset Manager's counsel, Jeff Udell, from Edward G. Kehoe. Taken together, these letters indicate agreement between all Members of NTE Carolinas Holdings for the Asset Manager to initiate the wire transfer of $10,856,780.09 of the "Utility Refund" from the NTE Carolinas Construction Account to Wattage Finance – NC, LLC ("Wattage") [at Wattage's bank account].
>
> Unless any Member objects by 5:00 PM, TODAY, January 16, 2019, the Asset Manager will instruct that payment to Wattage be made in the above-referenced amount and using the above-referenced account information. Please notify the Asset Manager immediately if any Member objects to this payment.

38. Receiving no objection to the Asset Manager's proposal to transfer a portion of the Utility Refund to Wattage, the Asset Manager initiated a wire transfer in the amount of $10,856,780.09 to Wattage on the evening of January 16, 2019.

39. On January 16, 2019, Castillo initiated a third arbitration (the "Third Arbitration") seeking a declaration that NTE has breached its obligations under the LLC Agreement by

12

attempting to compel the Asset Manager to make the distributions as set forth in the Instruction Notice.

40. Following the $10,856,780.09 payment to Wattage, the Asset Manager remains in control of $13,269,397.88 to be allocated among Claimants.

## Count One

### Statutory Interpleader Pursuant to 28 U.S.C. § 1335

41. The allegations in paragraphs 1 to 40 are realleged and reincorporated as if fully set forth herein.

42. As demonstrated through the correspondence and conduct of the Claimants set forth above, rival and conflicting claims exist against the Disputed Funds.

43. The Asset Manager is willing to transfer the Disputed Funds to the appropriate recipient. However, having been confronted with adverse and rival claims, the Asset Manager is unable to determine the fair and equitable allocation of the Disputed Funds between the Claimants.

44. The Asset Manager is unable to make payments to one Claimant without the risk of depleting available proceeds for the other Claimant and subjecting itself to asserted claims by the Claimants.

45. Without resolution of the Claimants' claims through statutory interpleader, the Asset Manager may be exposed to inconsistent findings and judgments and the unnecessary and inefficient burden of costs, fees, and expenses in defending multiple lawsuits because of the conflicting claims for the Disputed Funds.

46. It is in the best interest of all Claimants that the Asset Manager tender the Disputed Funds into the Court and allow the Claimants to seek judicial determination as to the proper allocation of these funds.

47. The Asset Manager requests that the Court discharge the Asset Manager from liability to any and all Claimants for claims arising out of the allocation of the Disputed Funds.

48. The Asset Manager further requests that the Court determine and declare an allocation of the Disputed Funds among the Claimants.

49. The Asset Manager stands ready, willing, and able to deposit the Disputed Funds with the Clerk of Court for deposit into the Court Registry upon an appropriate order from the Court and pending the Court's final judgment directing disposition of these funds.

**Prayer for Relief**

1. That the Court authorize and direct the Asset Manager to transfer the Disputed Funds to the Clerk of Court for deposit into the Court Registry;

2. That the Court enter an order, pursuant to 28 U.S.C. § 2361, enjoining Claimants from issuing any further instructions or instituting any proceeding that could affect the Disputed Funds;

3. That the Court issue process as directed by 28 U.S.C. § 2361 and direct nationwide service of process of the Complaint, Summons, and Order on the Asset Manager's Motion for Restraining Order and Service of Process by United States Marshals located within the districts in which each Claimant resides;

4. That the Court determine a fair, equitable and just distribution of the Disputed Funds between and among the Claimants;

5. That the Court release and discharge the Asset Manager from all liability with respect to claims arising out of the Disputed Funds;

6. That the Court award costs and fees as allowed under law; and

7. That the Court award such other and further relief as the Court deems just and proper.

This the 17th day of January, 2019.

Respectfully submitted,

/s/ Peter A. Santos
Peter A. Santos
N.C. Bar No.: 32040
James C. Smith
N.C. Bar No.: 8510
Kathleen Burchette
N.C. Bar No.: 45891
Nexsen Pruet, PLLC
227 West Trade Street, Suite 1550
Charlotte, NC 28202
Phone: (704) 339-0304
Facsimile: (704) 338-5377

-and-

Jeffrey A. Udell (*pro hac vice* forthcoming)
George W. Kroup (*pro hac vice* forthcoming)
Richard W. Fox (*pro hac vice* forthcoming)
Walden Macht & Haran LLP
One Battery Park Plaza, 34th Floor
New York, NY 10004
Phone: (212) 335-2030
Facsimile: (212) 335-2040

*Attorneys for Interpleader Plaintiff NTE Energy Services Company, LLC*